IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM E. MICHEL,<br><br>       Plaintiff,<br>v.<br><br>MEGAN J. BRENNAN, Postmaster General, United States Postal Service,<br>       Defendant. | **MEMORANDUM AND ORDER GRANTING UNITED STATES POSTAL SERVICE'S MOTION FOR SUMMARY JUDGMENT**<br><br>District Judge Ted Stewart<br><br>Case No. 2:18-CV-961-TS |

    This matter is before the Court on Defendant United States Postal Service's ("USPS") Motion for Summary Judgment (the "Motion"), which asks the Court to grant summary judgment for USPS on Plaintiff William Michel's ("Michel") age discrimination claim and retaliation claim. For the foregoing reasons, the Court grants the Motion on both claims.

    I.   BACKGROUND

    Michel worked as a mail carrier for USPS for many years until he was issued his second Notice of Removal and fired on July 20, 2015.[1] In the two years prior to his removal, Michel was subjected to disciplinary action for two at-fault motor vehicle accidents.[2] The first accident occurred in June 2013 when Michel backed a USPS vehicle into a police car.[3] Michel was suspended for 14 days because of this accident.[4] Then on December 6, 2014—about 18 months

---

[1] Docket No. 15, at 4; Docket No. 16-8, at 2.

[2] Docket No. 15, at 2; Docket No. 20, at 5.

[3] Docket No. 15, at 2; Docket No. 16-3, at 4; Docket No. 16-2, at 2; Docket No. 20, at 5.

[4] Docket No. 15, at 2; Docket No. 16-2, at 2–3.

1

later—Michel was in another at-fault accident when he backed a USPS vehicle into a parked car.[5] This was Michel's second at-fault accident in 18 months and his seventh at-fault accident in five years.[6]

After the December 2014 accident, USPS placed Michel on emergency suspension and issued him his first Notice of Removal on December 18, 2014.[7] Michel filed a union grievance and an EEO complaint regarding his removal.[8] Then on January 6, 2015, he entered into a "Removal Settlement Agreement" with USPS to resolve the union grievance.[9] This agreement gave Michel a second chance by reducing the removal to a 14-day Letter of Suspension.[10] Michel also agreed that he would be subject to removal if he "should have any accident for which he shall be found 'at fault', due to having committed an 'unsafe act', or observed committing an unsafe act during the course of delivering mail, specifically Handbook EL-814 Section X Items D.3 (doors), E.3 (Backing), and E.4 (Parking)."[11]

On June 17, 2015, Michel began the process of filing a second EEO complaint alleging age discrimination and retaliation for his first EEO complaint.[12] Just over a month later, on July 20, 2015, USPS issued a second Notice of Removal to Michel, which is the action giving rise to Michel's age discrimination and retaliation claims.[13] According to USPS, Michel was issued the

---

[5] Docket No. 15, at 2; Docket No. 16-1, at 4; Docket No. 20, at 5.

[6] Docket No. 15, at 2; Docket No. 20, at 5.

[7] Docket No. 15, at 2; Docket No. 16-4, at 2; Docket No. 20, at 6.

[8] Docket No. 20, at 6; Docket No. 20-1, at 2–17.

[9] Docket No. 15, at 3; Docket No. 20, at 7; Docket No. 16-6, at 2.

[10] Docket No. 15, at 3; Docket No. 20, at 7; Docket No. 16-6, at 2.

[11] Docket No. 16-6, at 2.

[12] Docket No. 20-2, at 2.

[13] Docket No. 15, at 4; Docket No. 20, at 10; Docket No. 16-8, at 2–4.

second Notice of Removal because his supervisor, Gabriel Medina ("Medina"), observed that Michel was not wearing his satchel and that a door of Michel's mail truck was unlocked while Michel completed a walking portion of his route.[14] Both of these actions violate USPS safety standards,[15] but Michel argues that USPS actually fired him because of his age and in retaliation for filing EEO complaints.[16] Michel agrees that he "forgot to put his satchel back on" after taking a bathroom break, but he disputes that he left the door unlocked.[17] Michel asserts that he did lock the door on the USPS vehicle and that Medina unlocked the door on the truck to create a reason to fire Michel.[18] Michel submits the Declaration of Troy Porter (the "Porter Declaration"), a witness who saw someone unlock the mail truck, to support this assertion, and he also provides evidence of three other employees who committed similar unsafe acts but were not fired to support his claims.[19] USPS argues the Porter Declaration is inadmissible, immaterial, and speculative and that these three employees are not similarly situated to Michel.[20] Now, the Court must determine whether Michel has provided sufficient evidence to survive USPS's Motion.

II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[14] Docket No. 15, at 3.

[15] *Id.* at 3–4; Docket No. 20, at 8–9.

[16] Docket No. 3, at 3–4.

[17] Docket No. 20, at 8.

[18] *Id.* at 9, 19–20.

[19] *Id.* at 11–12, 19–20; Docket No. 20-11.

[20] Docket No. 21, at 3–6, 9–11.

entitled to judgment as a matter of law."[21] "The moving party bears the initial responsibility of presenting evidence to show the absence of a genuine issue of material fact," then "[t]he nonmoving party must show that there is a genuine issue for trial."[22] The nonmoving party cannot rely on "mere allegations" but "must set forth specific facts showing that there is a genuine issue for trial."[23] In a motion for summary judgment, the Court must "view the facts in the light most favorable to the non-moving party."[24]

### III. ANALYSIS

Here, USPS seeks summary judgment on both of Michel's claims: age discrimination and retaliation for prior EEO activity.[25] Both claims can be established through direct evidence or circumstantial evidence.[26] Where, as here, the plaintiff is relying on circumstantial evidence, courts use the framework set out in *McDonnell Douglas* to analyze age discrimination and retaliation claims at summary judgment.[27] Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation.[28] If the plaintiff establishes a prima facie case, then the defendant has the burden to "articulate some legitimate,

---

[21] Fed. R. Civ. P. 56(a).

[22] *Hom v. Squire*, 81 F.3d 969, 973–74 (10th Cir. 1996).

[23] *Id.* at 973 (internal quotation marks and citation omitted).

[24] *Id.*

[25] *See* Docket No. 15, at 1.

[26] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

[27] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

[28] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)); *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004).

nondiscriminatory reason" for the action.[29] Then the plaintiff has an opportunity to show, by a preponderance of the evidence, that the reasons the defendant gave "were a pretext for discrimination" or retaliation.[30]

A. PRIMA FACIE CASE

The first step of the *McDonnell Douglas* analysis is to determine whether Michel has provided evidence to support a prima facie case of age discrimination or retaliation. Michel does not have sufficient evidence to support a prima facie case for either claim.

*1. Age Discrimination*

A plaintiff must show his or her age was a determinative factor in the adverse employment decision to succeed on an age discrimination claim.[31] To establish a prima facie case of age discrimination, a plaintiff must show "she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination."[32] Michel is over 40 and was terminated, so he is in the protected class and suffered an adverse employment action. The only element at issue is whether Michel was fired under circumstances giving rise to an inference of discrimination.

To establish an inference of discrimination, plaintiffs, like Michel, can show they were treated differently than similarly situated employees who were not in the protected class.[33] In the

---

[29] *Rivera*, 365 F.3d at 920 (quoting *McDonnell Douglas*, 411 U.S. at 802); *Stover*, 382 F.3d at 1071.

[30] *Rivera*, 365 F.3d at 920 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Stover*, 382 F.3d at 1071.

[31] *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1425 (10th Cir. 1993).

[32] *Bennett v. Windstream Communc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citation omitted).

[33] *See id.* at 1266 n.1.

Tenth Circuit, "similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[34] A "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[35] "Moreover, even employees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant."[36] "[W]hether two employees are similarly situated ordinarily presents a question of fact for the jury," but "at summary judgment, the court must determine whether plaintiff has adduced enough evidence to support a finding that the [other employee] and plaintiff were sufficiently similarly situated to support an inference of discrimination."[37]

In this case, Michel lists three younger employees he considers to be similarly situated to himself—Sarae Cart, Niualova Tupoumalohi, and Jordan Hawkins—each of whom had Medina as his or her supervisor and allegedly committed an unsafe act similar to Michel's but was not fired.[38] Specifically, Sarae Cart failed to set her parking brake and, like Michel's alleged violation, failed to lock her vehicle during a walking route.[39] Unlike Michel, Sarae Cart was correctly wearing her satchel at the time.[40] Medina spoke with her about safety and reminded her

---

[34] *Riggs*, 497 F.3d at 1117 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

[35] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Aramburu*, 112 F.3d at 1404).

[36] *Id.* (internal quotations and citations omitted).

[37] *Riggs*, 497 F.3d at 1117 (internal citations and quotation marks omitted) (second alteration in original).

[38] Docket No. 20, at 11–12.

[39] Docket No. 20-9, at 2.

[40] *Id.*

6

about setting the parking brake and securing the vehicle.[41] Michel also asserts that Niualova Tupoumalohi failed to secure his vehicle on December 12, 2014,[42] but according to the Observation of Driving Practices Medina signed relating to his observation on that date, Niualova Tupoumalohi correctly locked his vehicle but failed to set the parking brake.[43] Medina had an official discussion with him reviewing driving responsibilities.[44] And finally, Jordan Hawkins failed to lock his vehicle but successfully wore his satchel during a walking route.[45] Medina noted that he had an official discussion with Jordan Hawkins after this observation.[46] None of these employees was terminated for these violations.[47]

Michel did not provide any evidence about whether these employees were "subject to the same standards governing performance evaluation and discipline" or compare the relevant employment circumstances of these employees. But these factors, especially employment circumstances like disciplinary history, are material to determining whether other employees are similarly situated.[48] Prior to his termination, Michel was at a high level of discipline because he

---

[41] *Id.*

[42] Docket No. 20, at 12.

[43] Docket No. 20-9, at 3.

[44] *Id.*

[45] *Id.* at 4.

[46] *Id.*

[47] *Id.* at 2–4.

[48] *See Salazar v. Albuquerque Bernalillo Cty. Water Utility Auth.*, No. CIV 16-00120 RB/KK, 2017 WL 3610539, at *11 (D. N.M. Jan. 17, 2017) (unpublished) (finding an employee is not similarly situated where the plaintiff did not establish the disciplinary history of the employee); *Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1457 (D. Colo. 1995) (finding the employees were not similarly situated where the plaintiff had an extensive disciplinary history and there is no evidence about the other employee's disciplinary history); *Harris v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 673 F. App'x 537, 540 (7th Cir. 2016) ("Terpstra, it observed, was not comparable in all material aspects to Harris, given her less serious disciplinary history."); *Edwards v.*

had previously been placed on two 14-day suspensions for two at-fault accidents and was subject to the Removal Settlement Agreement at the time of his removal. Michel has not provided any evidence that Sarae Cart, Niualova Tupoumalohi, or Jordan Hawkins had been suspended prior to their violations or were subject to an agreement comparable to the Removal Settlement Agreement when they committed these unsafe acts. In addition, Medina stated that "[n]one of those three were subject to a 'Last Chance Agreement' nor had any one of them received 14 day suspensions" like Michel.[49] Because there is no evidence that these employees were at a disciplinary level similar to Michel, Michel has not "adduced enough evidence to support a finding that" these employees were similarly situated to him. Without this, there is no inference that USPS discriminated against Michel based on his age, so Michel's age discrimination claim cannot survive the Motion.

  2. *Retaliation*

Next, the Court must turn to Michel's retaliation claim. At the outset, the Court will address the Porter Declaration, a key piece of evidence Michel relies on to support his retaliation claim. Specifically, Michel alleges that his supervisor, Medina, unlocked the USPS vehicle and falsely accused Michel of leaving it unlocked. To support this allegation, Michel relies on the Porter Declaration, but USPS argues the Porter Declaration is inadmissible, immaterial, and speculative. The Court agrees the Porter Declaration is inadmissible for summary judgment purposes. While Rule 56 allows declarations as evidence at summary judgment,[50] the advisory

---

*Metro-North Commuter R.R. Co.*, 463 F. Supp.2d 279, 284 (D. Conn. 2006) ("[T]he absence of any evidence concerning the disciplinary records of the claimed comparators, particularly in light of the severity of plaintiff's own disciplinary history, is fatal to his disparate treatment claim.").

[49] Docket No. 21, at 19.

[50] *See* Fed. R. Civ. P. 56(c)(4).

committee explained that "[a] formal affidavit is no longer required" because "28 U.S.C. § 1746 allows a written unsworn declaration . . . subscribed in proper form as true *under penalty of perjury* to substitute for an affidavit."[51] When an unsworn declaration is not signed "under penalty of perjury," it is inadmissible for summary judgment purposes.[52] The Porter Declaration does not state that it is signed under penalty of perjury. Thus, the Porter Declaration is inadmissible and cannot be considered for this Motion.

Even if the Court could consider the Porter Declaration, the Porter Declaration alone requires speculation that is not sufficient to support Michel's allegations. Though the Court must "view the facts in the light most favorable to the non-moving party,"[53] the Court is not required "to make unreasonable inferences in favor of the non-moving party."[54] "[A]n inference is unreasonable if it requires 'a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'"[55] Porter states that on an unknown date he saw an unknown and unidentified male postal worker unlock and take pictures of Michel's mail truck.[56] Then, he saw the postal employee drop the keys to the mail truck in some bushes without locking

---

[51] Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendment (emphasis added).

[52] *See Estrada v. Cook*, 166 F. Supp. 3d 1230, 1238 (D. N.M. 2015) (finding "an unsworn declaration must be signed 'under penalty of perjury'" to be admissible at summary judgment); *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

[53] *Hom*, 81 F.3d at 973.

[54] *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs*, 117 F. App'x 64, 69 (10th Cir. 2004)).

[55] *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (quoting *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008)) (second alteration in original).

[56] Docket No. 20-11, ¶¶ 6–10

it again.[57] Porter did not provide a physical description of the postal worker or any other identifying information.[58] Nor did he provide any information as to when this occurred.[59] Michel argues that this postal worker was "obviously supervisor Gabe Medina," but Michel has not provided evidence connecting the events described in the Porter Declaration to Medina beyond a simple guess or possibility.[60] Because it is inadmissible and insufficient to support the allegations, the Court will not consider the Porter Declaration for the Motion, including in the retaliation claim analysis.

A retaliation claim requires a plaintiff to show "retaliation played a part in the employment decision."[61] The plaintiff must establish a prima facie case of retaliation by showing "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[62] Michel filed two EEO complaints for age discrimination and retaliation in the months before he was fired, so he did engage in protected opposition to discrimination. Michel was also fired from his job, so he suffered an adverse employment action. The remaining issue is whether there is a causal connection between his EEO complaints and termination.

---

[57] *Id.* at ¶ 10.

[58] *See generally id.*

[59] *See generally id.*

[60] Docket No. 20, at 20.

[61] *Hansen*, 844 F.3d at 925 (quoting *Fye*, 516 F.3d at 1224).

[62] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001) (citations omitted).

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"[63] Specifically, the Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation."[64] A plaintiff must also show "that the individual who took adverse action against [him or her] knew of the employee's protected activity"[65] or invoke "the cat's-paw theory of recovery and present[] evidence that a biased subordinate who lacked decisionmaking power used the formal decisionmaker as a dupe in a deliberate scheme to bring about an adverse employment action."[66] Michel relies on temporal proximity and the cat's-paw theory to support his prima facie case of retaliation.

Michel began the process of filing a second EEO complaint on June 17, 2015, alleging age discrimination and retaliation, and USPS fired Michel on July 20, 2015. Because Michel received the Notice of Removal just over one month after he began the process to file an EEO complaint, there is sufficient temporal proximity to support the causation element for the prima facie case. But USPS argues there is no causation because the final decisionmaker, Gordon Glenn ("Glenn"), did not know about the EEO activity until months after signing off on the termination.[67] Michel relies on the cat's paw theory to overcome this challenge.[68]

---

[63] *Id.* at 1253 (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

[64] *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

[65] *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (quoting *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)).

[66] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514–15 (10th Cir. 2015) (citation omitted).

[67] Docket No. 15, at 11; Docket No. 16-7, at 3.

[68] Docket No. 20, at 22 n. 4.

"To survive summary judgment when a retaliation claim is based on the cat's-paw theory, the plaintiff must establish that there is a genuine issue of material fact as to (1) the retaliatory animus of the subordinate, and (2) whether the subordinate's animus translated into retaliatory actions that caused the decisionmaker to take adverse employment action."[69] Michel argues Medina had retaliatory animus and took retaliatory actions by unlocking Michel's vehicle and accusing Michel of leaving it unlocked. But Michel does not have evidence to support this allegation or his cat's-paw theory, as set forth above. Thus, Michel cannot establish a prima facie case of retaliation, and the Court will grant the Motion on the retaliation claim.

B. PRETEXT

Even if Michel could establish a prima facie case of age discrimination or retaliation, Michel has not provided sufficient evidence to demonstrate pretext for either claim. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'"[70] "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[71] USPS states that it fired Michel because he committed unsafe acts by leaving the door on his mail truck unlocked and failing to wear his satchel during a walking route. In response to USPS's reasons, Michel says that he did lock the USPS vehicle, but he also admits that he forgot to wear his satchel. The parties agree, and the Court finds, that the failure to wear a satchel is an unsafe act

---

[69] *Thomas*, 803 F.3d at 515 (citations omitted).

[70] *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994) (quoting *Burdine*, 450 U.S. at 256).

[71] *See Rivera*, 365 F.3d at 924–25 (quoting *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999)) (alterations in original).

12

because the purpose for this rule is to provide mail carriers with a defense against bodily injury from dogs.[72] Because Michel admits he failed to wear the satchel and committed an unsafe act for which he was terminated, it is not necessary for the Court to consider his assertion that he locked the vehicle. Michel also alleges, without competent evidence, that USPS's reasons were unworthy of credence because Medina personally unlocked Michel's mail truck and framed Michel for leaving it unlocked. As discussed, Michel's allegation is not supported, so there is not sufficient evidence that USPS's reasons for firing Michel were pretextual.

## IV.   CONCLUSION

It is therefore

ORDERED that USPS's Motion for Summary Judgment (Docket No. 15) is GRANTED.

DATED December 4, 2020.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[72] Docket No. 15, at 3; Docket No. 20, at 8–9